UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEONARD HADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   Case No. 3:18-cv-02164-GCS |
| DENNIS LARSON, DEBORAH | ) |
| HALE, and MELODY MURRAY, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

On December 12, 2018, Plaintiff Leonard Hadley, *pro se*, filed a complaint against

Defendants Larson, Murray, and Hale pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff is

currently under the custody of the Illinois Department of Corrections ("IDOC") and is

housed at Big Muddy River Correctional Center. (Doc. 25). At the time of the incidents

underlying his complaint, Plaintiff was a pre-trial detainee at the St. Clair County Jail. *Id*.

After preliminary review pursuant to 28 U.S.C. § 1915A, Plaintiff brings one count against

all three defendants under the Fourteenth Amendment. Specifically, Plaintiff alleges that

Defendant Dr. Larson failed to refer Plaintiff to a specialist for maintenance of his

Automatic Implantable Cardiac Defibrillator ("AICD"). *Id*. at p. 7. Plaintiff also alleges

that Defendants Murray and Hale, both registered nurses, failed to give Plaintiff proper

doses of his medications. *Id*.

On December 28, 2020, Defendants filed a motion for summary judgment on the

issue of Plaintiff's exhaustion of administrative remedies (Doc. 95), and Plaintiff

responded on January 4, 2021. (Doc. 100). Defendants then replied to Plaintiff's response (Doc. 101), and Plaintiff again replied to Defendants' reply on January 21, 2021. (Doc. 102). On March 22, 2021, the Court held a hearing on this matter. For the reasons outlined below, Defendants' motion for summary judgment is **GRANTED.**

### FACTUAL BACKGROUND

Plaintiff was first detained at the St. Clair County Jail on September 28, 2018. (Doc. 96, p. 1). During that time, Plaintiff saw Defendant Larson for treatment of his AICD, which requires regular recalibration. (Doc. 25, p. 7). At some point during his incarceration at the St. Clair County Jail, Plaintiff alleges that Defendant Larson refused to refer him to an outside specialist for maintenance of his AICD. *Id*. While assisting with his treatment, Plaintiff alleges that Defendant Murray knew that she was giving Plaintiff an insufficient dose of his medications; despite knowing this, Defendant Hale refused to intervene on Plaintiff's behalf. *Id*.

Plaintiff wrote a grievance regarding insufficient treatment and lack of care for his ACID on October 3, 2018. There is no response from jail officials regarding this grievance; at the bottom, Plaintiff wrote "deputy refused to accept and sign." (Doc. 100, Exh. A). There is no indication that Plaintiff submitted a Captain's request prior to filing this grievance; however, Plaintiff asserted during the hearing that he filed three Captain's requests before this grievance, all of which were ignored for twenty-four hours.

Plaintiff initiated the present lawsuit on December 18, 2018. Approximately two months later, on February 13, 2019, Plaintiff filed another grievance relevant to this case.

(Doc. 96, p. 3). In this grievance, Plaintiff wrote that Defendant Larson had referred him for maintenance of his AICD off-site, but that Defendant Hale refused to follow-through on his order. *Id.* at p. 8. As with Plaintiff's October 2018 grievance, there is no indication that Plaintiff filed a Captain's request prior to initiating this grievance.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence for which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter; rather, it must determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be

given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prison Litigation Reform Act ("PLRA") governs lawsuits filed by prisoners and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file a suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As a pre-trial detainee within the St. Clair County Jail, Plaintiff was required to abide by the procedures established in the Detainee Rules and Regulations Handbook ("Handbook"). (Doc. 96, Exh. 2, p. 1). Before a detainee can initiate the grievance procedure, the detainee must submit a Captain's request. *Id*. at p. 3. If the captain does not respond to the request within fifteen calendar days, the detainee must inform the jail superintendent that his request was ignored. *Id.*

Only after resolution of the detainee's Captain's request may the detainee initiate the grievance procedure. (Doc. 96, Exh. 2, p. 3). Detainees may then provide a written grievance to the shift supervisor, which informs the supervisor of the particulars of the complaint. *Id*. The shift supervisor must provide a response to the grievance within three days; if the detainee feels the shift supervisor's resolution of the grievance is not satisfactory, the detainee may submit the grievance in writing to the Assistant Jail Supervisor within forty-eight hours. *Id*. The detainee may then submit the grievance to the Jail Superintendent within three days of receiving the Assistant Jail Supervisor's decision. *Id*. The Jail Superintendent will then review the grievance and issue a final decision, returning the grievance to the detainee within three days. *Id*.

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

ANALYSIS

Defendants provide one potential grievance relevant to the complaint, which Plaintiff filed on February 13, 2019. (Doc. 96, p. 2). However, Plaintiff initiated this lawsuit on December 18, 2018. As prisoners may not file a complaint prior to the exhaustion of their remedies, the Court finds that this grievance does not support finding that Plaintiff exhausted his administrative remedies. *See Ford*, 362 F.3d at 398.

Though Defendants provided only one example of a potentially relevant grievance in their motion for summary judgment, Plaintiff also attaches a grievance regarding the events at issue to his response. (Doc. 100, Exh. A).[1] This grievance is dated October 13, 2018, making the grievance timely. *Id.* In the grievance, Plaintiff states that medical professionals are not properly treating his AICD or providing him with medications. *Id.* On the bottom of the grievance, Plaintiff wrote, "deputy refuses to accept or sign." *Id.* However, Plaintiff provides no evidence that he first submitted a Captain's request before attempting to file this grievance. There is likewise no indication that Plaintiff proceeded to the Assistant Jail Supervisor or Jail Superintendent after the deputy allegedly refused to accept the grievance.

During the hearing on the motion for summary judgment, Plaintiff stated that he filed three Captain's request forms on this matter and submitted them to the captain; he then filed a grievance twenty-four hours later, after the captain ignored the Captain's

---

[1]      In their reply, Defendants claim that Plaintiff's October grievance may be fabricated because Plaintiff appears to have used different pens to write the grievance and to sign and date the form. (Doc. 101, p. 3). However, the Court credits Plaintiff's testimony that the pens available at St. Clair County Jail did not always work and that he occasionally had to try different pens. Accordingly, the Court analyzes Plaintiff's grievance on its merits.

request. Plaintiff also argued that deputies often refused to accept grievances and would only "sometimes" give detainees the forms necessary to write a grievance. The Court refuses to credit Plaintiff's testimony that deputies refused to accept either his Captain's request forms or failed to provide detainees with grievance forms. As Defendants pointed out during the hearing, Plaintiff regularly availed himself of the grievance procedure at the St. Clair County Jail, filing seventeen grievances during his eight-month incarceration at the jail. *See also* (Doc. 96, Exh. 1). Supervisors routinely responded to these grievances in a timely manner. Plaintiff also testified on cross-examination that he recalled at least one instance in which deputies did promptly respond to his grievances, further contradicting his claims that prison officials denied detainees the opportunity to grieve and failed to respond to those grievances.  However, even if the Court credited Plaintiff's testimony in this regard, this testimony would not be sufficient to find that Plaintiff exhausted his administrative remedies through his October 2018 grievance.

Plaintiff argues that the captain's failure to respond to his Captain's request and the deputies' failure to accept his grievance form rendered his remedies unavailable. There are three circumstances in which an administrative remedy is not capable of use to obtain relief, and is therefore unavailable: (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart a prisoner's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60

(2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly follows the procedure for exhausting administrative remedies, but prison officials mishandle the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if a prison appellate body rejected an appeal on the basis of a grievance officer's misidentification of the prisoner's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

If grievance personnel do not respond to a prisoner's grievance, that prisoner's administrative remedies are also rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for a prisoner's remedies to be unavailable due to lack of a response, a prisoner must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will inform a prisoner of the status of his or her grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford*, 362 F.3d at 400. In contrast, in *Reid*, the Seventh Circuit Court of Appeals found that a two-month period of silence rendered administrative remedies unavailable only because the prisoner had no other reason to believe that anyone was "looking into" his grievance. 962 F.3d at 331. Furthermore, if the grievance process permits a prisoner to consider the absence of a response to be a denial of the grievance, the prisoner must take the next step in the administrative process in order to exhaust his or her administrative remedies. *See Drew*

*v. Vanord*, Case No. 19-cv-00285-JPG, 2020 WL 55016781, at *4 (S.D. Ill. Aug. 25, 2020). If

a prisoner fails to proceed to the next step in the administrative process after a delay, that

prisoner's remedies remain unexhausted. *Id.*

Plaintiff admitted that he waited only twenty-four hours after submitting his

Captain's request before attempting to file a grievance; however, the Handbook outlines

that detainees must wait at least fifteen calendar days before moving to the next step in

the administrative process. Furthermore, Plaintiff's next steps would not be to file a

grievance, but instead to inform the Jail Superintendent that the captain has ignored his

Captain's request. There is no evidence here that Plaintiff proceeded to that step prior to

attempting to file his grievance. Accordingly, the Court finds that his administrative

remedies remain unexhausted.

### CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment for

failure to exhaust administrative remedies (Doc. 95) is **GRANTED.** The Court directs the

Clerk of the Court to dismiss this case without prejudice.

**IT IS SO ORDERED.**

Digitally signed
by Judge Sison 2
**Dated:  April 23, 2021.**                                          Date: 2021.04.23
13:16:22 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**